**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Yerbaé, LLC,

        Plaintiff,

v.

Carl Sweat, et al.,

        Defendants.

No. CV-25-01686-PHX-KML

**ORDER**

Yerbaé filed this suit against defendant and former Yerbaé employee Carl Sweat, alleging that after Sweat was terminated from his employment with Yerbaé, he used Yerbaé's confidential and trade secret materials to develop a competing product. (Doc. 1.) Earlier this year, the court in large part denied Sweat's motion to dismiss the case. (Doc. 47 at 1.) The case progressed into discovery and the parties now submit two joint notices of discovery disputes. (Docs. 78; 80.) In the first dispute, Sweat alleges Yerbaé refused to sufficiently answer RFPs and ROGs which request information about Yerbaé's asserted trade secrets and intellectual property, among other topics. (Doc. 78 at 2-3.) The second dispute concerns Yerbaé's request for a forensic inspection of Sweat's electronic devices due to Sweat's allegedly-evasive answers regarding documents on those devices and two of Yerbaé's Requests for Admissions ("RFAs") to which Sweat has objected. (Doc. 80 at 2-3.)

Sweat's dispute is unfounded and premature. Yerbaé cites discovery responses that specify discrete documents, categories, and Bates numbers for its alleged trade secrets as

well as information about why Yerbaé views them as such. (Doc. 78 at 4 (compiling discovery responses); *see* Doc. 78-2 at 12-16.) It is not clear how Sweat came to the conclusion that Yerbaé does not sufficiently identify concepts, designs, or which documents contain trade secrets. (Doc. 78 at 2.) Sweat also discusses Yerbaé's "refus[al]" to provide responses for ten categories of RFPs. (Doc. 78 at 3.) But Yerbaé asserts it has agreed to supplement its responses before the discovery deadline. (Doc. 78 at 5.) For instance, Sweat states Yerbaé refused to answer RFPs regarding how it believes Sweat improperly used trade secrets and confidential information—however, Yerbaé agreed to answer that question but could not begin doing so until Sweat's recent production of documents relevant to that issue. (Doc. 78 at 4-5.) Yerbaé's discovery responses will stand.

The second dispute is more complicated. Yerbaé first alleges Sweat has been evasive in answering questions about the Yerbaé documents he allegedly improperly retained after his employment, such that a forensic inspection of his devices is appropriate. (Doc. 80 at 2.) "Although forensic examination is a potential remedy, the ability to inspect an opposing party's computers or other electronic devices is by no means a matter of right." *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 52 (D. Nev. 2025). Courts are "reluctant" to allow this "extraordinary remedy," and permit it only where (1) there are serious questions about the productions' reliability and (2) the information from the prospective forensic examination would be proportional to the needs of the case. *Id*. at 52-53. The moving party must make a strong showing the opposing party evaded discovery obligations. *Id*. at 53.

Here, Sweat submitted an answer and supplement to Yerbaé's interrogatory requesting Sweat "identify" the Yerbaé documents which remained in his possession, custody, or control after April 8, 2024. (Doc. 80 at 75-76.) Sweat initially stated he had deleted all Yerbaé documents between April 7 and April 24, 2024, including a Yerbaé folder, and that while "some" (presumably additional) documents and emails were also automatically cached/auto-saved on his computer, he could not identify them. (Doc. 80 at 76.) Sweat's supplement stated he performed a comprehensive investigation of the laptop he used for Yerbaé work (and a backup), and found three areas containing responsive

documents. (Doc. 80 at 76.) This answer appears responsive to the interrogatory, which asks Sweat only to "identify" these documents rather than answer exactly how each one was cached, stored, or disposed of. (*See* Doc. 80 at 2.) Yerbaé has therefore not made a sufficiently strong showing of evasion for the court to permit the "extraordinary remedy" of a forensic inspection. *See id.* at 52-53.

Yerbaé next takes issue with Sweat's responses to RFAs 7 and 9. These RFAs respectively asked Sweat to admit that one employment contract required Sweat to maintain the confidentiality of Yerbaé's confidential information and another required Sweat to return Yerbaé confidential information and company property upon termination of his employment. (Doc. 80 at 3, 49-50.) Sweat "denied" these admissions because they "require[] a legal conclusion" and the agreements conflict with other existing agreements. (Doc. 80 at 49-50.) Sweat's answers appear to violate Rule 30's requirement that parties *either* admit, deny, or object to an RFA. Fed. R. Civ. P. 36(a)(4). Further, Yerbaé is correct that RFAs relating to contract interpretation are permissible because they involve the application of law to fact. *James v. UMG Recordings, Inc.*, No. C 11-1613 SI (MEJ), 2013 WL 5402045, at *1 (N.D. Cal. Sept. 26, 2013). Sweat must therefore amend his answers to these RFAs.

Accordingly,

**IT IS ORDERED** the relief Sweat requested in Doc. 78 is denied. As to Doc. 80, Yerbaé may not proceed with its request for a forensic inspection of Sweat's electronic devices, but Sweat must amend his answers to the Requests for Admissions 7 and 8.

Dated this 20th day of July, 2026.

Honorable Krissa M. Lanham
United States District Judge

- 3 -