**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Yerbae LLC,

Plaintiff,

v.

Carl Sweat,

Defendant.

No. CV-25-01686-PHX-KML

**ORDER**

After defendant Carl Sweat was terminated from his employment with plaintiff Yerbaé, LLC (“Yerbae”), Yerbae brought this suit alleging Sweat used Yerbae’s confidential and trade secret materials in developing a competing product. Sweat then brought counterclaims against Yerbae, which Yerbae moved to dismiss. Yerbae’s motion is granted in part and denied in part.

## I. Background

The following facts are taken from Sweat’s counterclaims except for some background facts drawn from Yerbae’s own pleadings. Sweat has worked in the beverage industry for more than thirty years, serving in executive positions for companies such as Coca-Cola and Starbucks. (Doc. 70 at 2.) Yerbae, based in Arizona, specializes in plant-based energy drinks. (Doc. 1 at 5.) In 2023, Yerbae began pursuing opportunities to work with college athletes whom the National Collegiate Athletic Association (“NCAA”) had recently permitted to monetize their “name, image, and likeness” (“NIL”) rights through marketing and promotions. (Doc. 1 at 7.) Around that time, Yerbae solicited Sweat

to serve as a member of its board of directors. (Doc. 70 at 3.) Sweat signed Yerbae's Board of Directors Service Agreement ("BDSA") for his position as "Director" in February 2023. (Doc. 70 at 3.)

Almost a year after joining it, Sweat agreed to resign from the board to become Yerbae's president. (Doc. 70 at 5.) In taking on that role, Sweat signed the Yerbae Employment Agreement ("YEEA"), effective January 1, 2024. (Doc. 70 at 5.) The YEEA included, among other provisions, clauses related to company computer equipment and reimbursement of business expenses. (Doc. 70 at 14, 22.) It also contained a merger clause, stating that the YEEA "supersede[d] any prior agreements between [Sweat] and [Yerbae]." (Doc. 1-2 at 4.) Sweat's compensation included a $3,500 monthly living allowance and a $9,000 vehicle allowance. (Doc. 70 at 14, 28.)

In the fall of 2023, and continuing through the period when Sweat became president, Yerbae began a partnership with the University of Georgia ("UGA") and CCC, its NIL collective. (Doc. 70 at 7, 10.) Yerbae ultimately branded its UGA-themed beverage "Red & Black Rush" and launched an initial promotion of the beverage at a UGA gala in April 2024. (Doc. 70 at 10.)

Around when the UGA project began, Sweat and Yerbae exchanged communications about potentially engaging a third-party website development company, CTRL+ALT+Digital ("CAD"). (Doc. 70 at 8.) Yerbae engaged CAD for part of 2024 and CAD invoiced Yerbae for the services it rendered. (Doc. 70 at 9.) Yerbae then alleged Sweat did not have authority to enter into the contract with CAD and promptly terminated it. (Doc. 70 at 10; Doc. 70-1 at 78.) Sweat alleges CAD severed its relationship with him shortly after settling with Yerbae in a confidential agreement. (Doc. 70 at 10, 34.)

Yerbae terminated Sweat on April 7, 2024. (Doc. 70 at 11-12.) Yerbae alleges he conspired with CCC shortly afterwards to exploit Yerbae's intellectual property rights by launching a competing "Red & Black Raw Sportswater" product. (Doc. 70-1 at 79.) Todd Gibson, Yerbae's founder, addressed Sweat's sportswater launch in a text message to Sweat on April 14, 2024. (Doc. 70-1 at 85.) That text message stated, in part, that Sweat could

"[m]ake a candy bar[,] a bottle[d] water[,] or something that does not compete" but that he could not "use [Yerbae's] suppliers, [Yerbae's] contracted customers, [or Yerbae's] knowledge and insights" to create a "competitive product." (Doc. 70-1 at 85.) Following his termination, Sweat sought reimbursement of the allowances and other business expenses from Yerbae via email. Sweat believed the YEEA required Yerbae to reimburse him but no such reimbursements were issued. (Doc. 70-1 at 64-67.)

At some point during his employment, Yerbae began using Sweat's name and image on its investor website and investor presentations. (Doc. 70 at 13.) According to Sweat, his name and image continued to be used on the investor presentation at least through June 2, 2025. (Doc. 70 at 13.) During this time, Yerbae told potential investors in a presentation about upcoming NIL contracts with several universities, which Sweat alleges were false representations. (Doc. 70 at 13.)

On April 4, 2025, Yerbae sent CCC a settlement demand letter, alleging various breaches of employment agreements and thefts of intellectual property. (Doc. 70 at 20; Doc. 70-1 at 71-83.) The letter primarily involved CCC's use of proprietary materials in the Red & Black sportswater product it had launched in concert with Sweat. (Doc. 70-1 at 78-81.) Almost immediately after sending the demand letter to CCC, Yerbae initiated suit against Sweat for violations of his employment contracts, trade secrets claims, and other related counts. (Doc. 1 at 25-32.) Yerbae's complaint also named CCC, but the two companies settled and CCC was voluntarily dismissed in November 2025. (Docs. 1, 43, 44.) Sweat then filed and amended counterclaims, asserting tortious interference with business expectancies, a violation of the Lanham Act, breach of contract, unjust enrichment, promissory estoppel, abuse of process, right to publicity, defamation, and indemnification. (Doc. 70 at 24-38.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court construes the allegations of the complaint "in the light most favorable to the plaintiff." *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).

## III. Analysis

### A. Tortious Interference

Sweat first alleges a claim for tortious interference based on his ongoing business expectancies with CCC, CAD, and UGA. (Doc. 70 at 26.) Sweat alleges he was working on producing and marketing a sportswater product after Yerbae terminated him, and his close relationships with CCC, CAD, and UGA would have allowed his sportswater to "fill the void" Yerbae left after terminating its Red & Black Rush product. (Doc. 70 at 16.) According to Sweat, Yerbae's demand letter to CCC caused those third parties to not do business with him. (Doc. 70 at 16, 25-26.)

To assert a claim for tortious interference under Arizona law, Sweat must allege (1) the existence of a valid business expectancy, (2) Yerbae's knowledge of that expectancy, (3) that Yerbae intentionally induced or caused termination of the expectancy, and (4) damage suffered because of the termination. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041 (Ariz. 1985). Establishing a valid business expectancy requires evidence of an "actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Dube v. Likins*, 167 P.3d 93, 101 (Ariz. Ct. App. 2007) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994)). A "speculative hope of a business expectancy is not enough" to state a

plausible claim for relief. *ThermoLife Intern., LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012).

Here, Sweat has alleged he was in contact with third parties but has not alleged the existence of an actual contract or commercial arrangement with them. (Doc. 73 at 17.) Sweat states they were merely "contemplating a contract" when Yerbae sent its letter to CCC (Doc. 70 at 10), and admits he "had no separate business relationship with CCC or UGA outside of his role at Yerbae" (Doc. 70 at 9). It is doubtful that Sweat has alleged sufficiently specific business expectancies with CCC, CAD, or UGA. Regardless, his claim fails on another, independent ground.

To be actionable, Yerbae's alleged interference must also have been intentional and improper, and any liability must be based on more than the interfering act itself. *Neonatology Assoc., Ltd. v. Phoenix Perinatal Assoc. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007); *see Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005) ("The interference must be 'improper' before liability will attach."). The only allegedly improper statements identified by Sweat were those in a demand letter from Yerbae to CCC.[1] (Doc. 70 at 16, 24-25). Tortious interference claims cannot be premised on privileged statements. *World Res. Co. v. Roosevelt Irr. Dist.*, No. 1 CA-CV 10 0868, 2012 WL 4847033, at *7 (Ariz. Ct. App. Oct. 11, 2012) ("if the speech was absolutely protected from liability, it was not improper"); *Western Tech., Inc. v. Sverdrup & Parcel, Inc.*, 739 P.2d 1318, 1323-24 (Ariz. Ct. App. 1986) (holding that defamatory publication privilege for judicial proceedings barred plaintiff's intentional-interference action). The letter Yerbae sent is privileged, and therefore not improper, because it was made in "furtherance of litigation that [wa]s contemplated in good faith and under serious consideration." *World Res. Co.*, 2012 WL 4847033, at *3. The statements in the letter were related to and connected with the proceedings because the breach-of-contract action between Yerbae and CCC was based on Sweat's alleged actions during his work with CCC (Doc. 70-1 at 71-83). *See Green*

[1] Sweat also claims Yerbae made false and defamatory statements "in public" and to unspecified "third parties" and "outside persons and businesses," but does not identify who made these statements, to whom, or in what context. (Doc. 70 at 24-26.) "[M]ere conclusory statements" do not satisfy Rule 12(b)(6). *Iqbal*, 556 U.S. at 663.

*Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984) ("In order to fall within the privilege, the defamatory publication must relate to, bear on or be connected with the proceeding."); *see also Bailey v. Superior Court In & For Santa Cruz Cnty.*, 636 P.2d 144, 146 (Ariz. Ct. App. 1981) (defamatory statements can be about third party provided they bear a relationship to the proceedings). And although there are exceptions to the privilege, Sweat provides no facts supporting any exception applying. *See World Res. Co.*, 2012 WL 4847033, at *6 (legal conclusion that settlement discussion was a mere "stick-up" was not well pleaded).

Because Yerbae's demand letter to CCC was not improper, Sweat's tortious interference claim fails on the third element. Sweat has not alleged any other actions by Yerbae that could form the basis for his claim. Therefore, Count I is dismissed.

**B. Lanham Act**

Sweat alleges a violation of the Lanham Act based on Yerbae's use of his name, image, and career credentials in investor presentations and "public-facing documents." (Doc. 70 at 26-27.) Section 1125(a) of the Lanham Act creates liability for false association and for false advertising. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Because Sweat does not allege any elements of a false advertising claim, the court analyzes only whether he has pleaded a false association claim.

For such a claim to survive, Sweat must plausibly allege (1) Yerbae used a designation or false designation of origin, (2) the use was in commerce in connection with goods or services, (3) the use was likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of Yerbae with Sweat, or (b) as to the origin, sponsorship, or approval of Yerbae's goods, services, or commercial activities by Sweat, and (4) Sweat has been or is likely to be damaged as a result of the use. 15 U.S.C. § 1125(a)(1)(A); *see Longoria v. Kodiak Concepts LLC*, 527 F. Supp. 3d 1085, 1106 (D. Ariz. 2021).

Sweat may satisfy the first two elements (Doc. 70 at 27; Doc. 70-1 at 50). *See Longoria*, 527 F.Supp.3d at 1106 (finding first two elements met because defendant used

photos of plaintiffs in commerce). But when assessing the third element, the relevant inquiry—whether a "reasonably prudent consumer" is likely to be confused as to Sweat's affiliation with Yerbae—is measured based on the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) ("*Sleekcraft* factors").[2] *Hara v. Netflix, Inc.*, 146 F.4th 872, 877 (9th Cir. 2025) (simplified). Sweat alleges he is "very well-known and respected in the beverage and consumer packaged goods industry" (Doc. 70 at 21), has "developed a national reputation for delivering strong financial results and efficiencies to consumer beverage clients," and has "received numerous accolades" (Doc. 70 at 4). Sweat's only support for these bare contentions—outside of the conclusions above—are a handful of online articles mentioning Sweat in connection with beverage industry news, the most recent of which is from 2015. (Doc. 70-1 at 6-27.)

In false endorsement cases, the "strength of the mark" (*Sleekcraft* factor one) is evaluated by looking to the level of recognition the person "has among the segment of the public to whom the advertisement is directed." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001); *White v. Samsung Elec. Am., Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992) ("The 'strength' of the mark refers to the level of recognition the celebrity enjoys among members of society."). Crediting the facts alleged, Sweat is not a celebrity among the relevant audience. Sweat has not plausibly shown that his name and image "enjoy a high level of recognition" among potential investors, the audience Yerbae was allegedly trying to attract by using his information in investment presentations (Doc. 70 at 26-27). *Downing*, 265 F.3d at 1008; *see also Ji v. Bose Corp.*, 538 F. Supp. 2d 349, 352 (D. Mass. 2008) ("She asks the Court to infer from her appearance in three advertisements within an industry, and 'numerous' others in related fields, that the target audience for Bose home theater systems recognizes her personally. That is not a credible inference."). Sweat's allegations do not suggest that he enjoys recognition comparable to a famous television

[2] The *Sleekcraft* factors relevant to likelihood of confusion are (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. 599 F.2d at 348-49.

host or surf "legends." *See White*, 971 F.2d at 1400; *Downing*, 265 F.3d at 1008. His unsupported claims of a "national reputation" are not enough. *See Lemon v. Harlem Globetrotters Intern., Inc.*, 437 F. Supp. 2d 1089, 1096 (D. Ariz. 2006) ("Plaintiffs merely assert that they enjoy 'world wide fame.' They provide no supporting information") (simplified). As such, Sweat has not established that his identity can reasonably be compared to a "trademark" worthy of Lanham Act protection. *See, e.g.*, *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) (requiring "economic interest akin to that of a trademark holder in controlling the commercial exploitation of his or her identity" to support false association claim).

Most other factors do not favor Sweat either. As to "how closely the plaintiff's fame, such as it is, relates to the product being advertised," *Ji*, 538 F. Supp. 2d at 352, Sweat's "fame" is minimal at best. If anything, the bio Yerbae used to allegedly promote itself to investors suggests Sweat's celebrity lies in the medical device industry rather than the beverage industry. (Doc. 70 at 26.) Next, as to factor four, Sweat's complaint does not allege any actual confusion on behalf of potential investors other than the conclusion that "[u]pon information and belief, investors were confused and/or misled about Sweat's affiliation with Yerbae" (Doc. 70 at 27). *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Though "[t]he *Sleekcraft* factors are intended to function as a proxy or substitute for consumer confusion, not a rote checklist," Sweat has not plausibly alleged that potential investors would be confused by the inclusion of his information on the presentations. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012). Sweat need not satisfy any prescribed number of *Sleekcraft* factors to allege likelihood of confusion, but he has failed to raise such likelihood beyond a "sheer possibility." *Iqbal*, 556 U.S. at 678.

**C. Right to Publicity**

The status of right-to-publicity actions under Arizona law is less than clear. *See Canas v. Bay Ent., LLC*, 498 P.3d 1082, 1086 (Ariz. Ct. App. 2021) (finding right-to-publicity cause exists under invasion of privacy); *In re Estate of Reynolds*, 327 P.3d 213, 216-17 (Ariz. Ct. App. 2014) (finding right to publicity more akin to a property right); *Pooley v. Nat'l Hole-In-One Ass'n*, 89 F. Supp. 2d 1108, 1111 (D. Ariz. 2000) ("Arizona has not recognized a claim for the right of publicity in common law or by statute."). But "[i]n absence of Arizona law to the contrary, courts follow the Restatement." *Pooley*, 89 F. Supp. 2d at 1111. The Restatement (Third) of Unfair Competition characterizes a claim for the right to publicity as creating liability when "[o]ne . . . who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade . . . ." Restatement (Third) of Unfair Competition § 46 (1995); *Pooley*, 89 F. Supp. 2d at 1111.

Sweat must therefore plausibly allege that (1) Yerbae used his identity, *i.e.*, his name or likeness, (2) to Yerbae's advantage, (3) without Sweat's consent, and (4) Sweat suffered resulting injury. *Pooley*, 89 F.Supp.2d at 1111; *Lemon*, 437 F. Supp. 2d at 1100. Sweat alleges his name and image were used in Yerbae's investor presentation for over a year after his termination (Doc. 70 at 13), which advantaged Yerbae because his well-known and "excellent" reputation in the beverage industry was used to induce investment and possible purchase funding. (Doc. 70 at 36.) Taking these contentions as true, Sweat has plausibly pleaded the first two elements of the claim.

Turning to the third element, consent in right-to-publicity claims may be implicit and is to be evaluated objectively from the perspective of a reasonable person. *Jones v. Corbis Corp.*, 489 F. App'x. 155, 156 (9th Cir. 2012). Sweat does not allege Yerbae's use of his name and image during his employment was without consent, but it is reasonable that such consent would cease upon his termination. Therefore, even if Sweat initially consented, his claim that the post-termination use was without his permission or approval (Doc. 70 at 13) is plausible. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1216

(finding plaintiffs plausibly alleged lack of consent to second and third endorsement emails even if they consented to initial emails).

As to injury, Sweat claims Yerbae falsely represented to potential investors that it had secured NIL contracts with certain universities while using his name and image in the investor presentation. (Doc. 70 at 13.) This harm—a reputational injury—is the only one he alleges. However, a claim for right to publicity "affords redress of *commercial* injuries, by contrast to personal injuries of the sort remedied by a claim for, e.g., invasion of privacy by intrusion or publication of private facts." *Reynolds*, 327 P.3d at 215 (emphasis added); Restatement Third § 46 cmt. a. As such, the right to publicity under Arizona law involves a commercial—rather than reputational or emotional—injury. Of Arizona's limited publicity cases, almost all involved plaintiffs claiming to be injured by denial of the fair market value they would have received but for the misappropriation of their publicity. *See, e.g., Lemon*, 437 F. Supp. 2d at 1103; *Longoria*, 527 F. Supp. 3d at 1099; *Gray v. LG&M Holdings LLC*, No. CV-18-02543-PHX-SRB, 2020 WL 6200165, at *4 (D. Ariz. Sept. 23, 2020); *Pinder v. 4716 Inc.*, 494 F. Supp. 3d 618, 635 (D. Ariz. 2020); *Takeguma v. Freedom of Expression*, No. CV-18-02552-PHX-MTL, 2021 WL 487884, at *12 (D. Ariz. Feb. 10, 2021); *Pepaj v. Paris Ultra Club LLC*, No. CV-19-01438-PHX-MTL, 2021 WL 632623, at *9 (D. Ariz. Feb. 18 2021); *Hinton v. Chretin's Fam. LLC*, No. CV-24-01817-PHX-SMM, 2025 WL 1634942, at * (D. Ariz. June 9, 2025). Sweat has not pleaded any commercial injury from the use of his information in investor presentations such that his claim fails on the fourth prong. A right-to-publicity claim is not the appropriate avenue for redress of reputational harm.

**D. Breach of Contract**

Neither party disputes that the YEEA was a valid contract, nor that it contains expense and computer equipment provisions within it. (Doc. 1 at 12; Doc. 70 at 5; Doc. 73 at 19.) At the motion-to-dismiss stage, the court may consider documents incorporated in the complaint by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the court deems the YEEA and BDSA incorporated by reference because Sweat's

second amended counterclaims reference them and they are central to his claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

To state a claim for breach of contract under Arizona law, Sweat must allege (1) the existence of a contract between him and Yerbae, (2) breach of the contract by Yerbae, and (3) resulting damage to Sweat. *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1148 (D. Ariz. 2012); *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021). There is no dispute the first element is met.

As for breach, Sweat argues multiple theories. He first claims Yerbae breached the employment agreements by failing to pay him compensation and other amounts owed. (Doc. 70 at 29.) It is unclear, and Sweat does not specify, what compensation or other amounts Yerbae failed to pay. Because "mere conclusory statements" do not survive under Rule 12(b)(6), Sweat has failed to state a claim on this theory. *Iqbal*, 556 U.S. at 663.

Sweat's theory that Yerbae breached its contract with him by asserting non-existent confidentiality rights in documents and materials after his termination (Doc. 70 at 29) similarly fails. Sweat does not specify what "material obligation of the contract" was breached and the court is unable to discern it. *Hannibal-Fisher*, 523 F. Supp. 3d at 1093. Sweat has not plausibly alleged a breach-of-contract theory based on these allegations.

Sweat alleges Yerbae breached the BDSA and "other governing documents" by failing to provide him with indemnification protection and insurance coverage. (Doc. 70 at 30). As discussed in detail later, the YEEA had superseded the BDSA at the relevant time such that the BDSA no longer had any contractual effect. *See, e.g., Ft. Mohave Farms, Inc. v. Dunlap*, 393 P.2d 662, 663-64 (Ariz. 1964) (explaining that a contract is superseded by a subsequent agreement on same subject matter if satisfactory proof establishes that parties intended that result). Accordingly, this breach theory also fails.

Lastly, Sweat alleges Yerbae breached the YEEA by refusing to reimburse him for approved business expenses and failing to provide him with a company-owned laptop. (Doc. 70 at 29.) Yerbae argues Sweat did not comply with a general requirement to submit his expenses in a particular manner (Doc. 77 at 12), and that the YEEA did not obligate

them to provide Sweat with a company laptop because the clause states only that they "will" provide one. (Doc. 73 at 19.) But when contract language is unambiguous, it is applied as written, and parties' disagreement about the meaning of the language does not alone create an ambiguity. *Worldwide Jet Charter, Inc. v. Toulatos*, 523 P.3d 398, 401 (Ariz. Ct. App. 2022). Contract language must be considered "according to its plain and ordinary meaning" unless it is shown that the parties intended otherwise, so the court views the phrase "will provide a laptop" as imposing an obligation on Yerbae. *Gray v. GC Serv., LP*, 540 P.3d 1240, 1244 (Ariz. Ct. App. 2023). And Sweat alleges a valid contract between him and Yerbae that contained a provision requiring reimbursement of expenses, which Yerbae failed to comply with. While Yerbae offers merits defenses that may be valid at summary judgment, Sweat's allegations are sufficient to state a viable theory at this stage.

Because Sweat has adequately pleaded breaches of the YEEA's expenses and computer-equipment provisions, Count III may proceed on those theories only.

**E. Unjust Enrichment**

Under Arizona law, unjust enrichment requires the plaintiff to prove "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of a justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Perez v. First American Title Ins. Co.*, 810 F. Supp. 2d 986, 991 (D. Ariz. 2011) (simplified).

Sweat proffers two grounds for unjust enrichment: Yerbae failed to pay Sweat his living allowance, vehicle allowance, and compensation for his services; and Yerbae benefited from using Sweat's name, image, and likeness after his termination. (Doc. 70 at 31-32.) Although Yerbae contends that the doctrine of unjust enrichment is inapplicable where "a specific contract . . . governs the relationship of the parties" (Doc. 73 at 19), the "mere existence of a contract governing the dispute does not automatically invalidate an unjust enrichment alternative theory of recovery." *Adelman v. Christy*, 90 F. Supp. 2d 1034, 1045 (D. Ariz. 2000). A party may bring an unjust enrichment claim in the alternative "where [his] inability to enforce the contract leaves [him] without an adequate remedy at

law," *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833 (D. Ariz. 2016), and where the party has not received the benefit of the contractual bargain. *See Adelman*, 90 F. Supp. 2d at 1045 (plaintiff entitled to pursue alternative unjust enrichment theory but can only recover under either contract or enrichment). Sweat pleads unjust enrichment "in the alternative to [his] other claims," so the claim is not barred by the fact that he also pleaded breach of contract. (Doc. 70 at 32.)

As to the allowances, the unjust-enrichment claim can proceed past the pleading stage. Sweat alleges he incurred expenses in connection with performing his employment duties to Yerbae, and that performance benefited Yerbae. (Doc. 70 at 31.) Sweat claims he was owed reimbursement for those expenses. (Doc. 70 at 31.) If Sweat's breach-of-contract claim against Yerbae for those reimbursements is unsuccessful, he will have no other remedy at law. Therefore, Sweat has adequately pleaded unjust enrichment as to the allowances and his claim may proceed on this theory.

As to Sweat's second theory, he has failed to allege how Yerbae's use of his name and image impoverished him. Sweat puts forth no facts to show that he should have been, or expected to be, compensated for the use of his name and image in Yerbae's investor presentation. *See Stapley v. American Bathtub Liners, Inc.*, 785 P.2d 84, 88 (Ariz. Ct. App. 1989) (finding no impoverishment where defendant's actions did not cause plaintiffs to incur additional expenses or be deprived of funds they might otherwise have received); *Lemon*, 437 F. Supp. 2d at 1107 (finding no impoverishment without evidence that use of plaintiffs' names and likeness deprived them of other endorsement deals). Sweat only vaguely alleges that the use of his identity enriched Yerbae "at Sweat's expense" without providing him "any further compensation."[3] (Doc. 70 at 31-32.) Because Rule 8's pleading

[3] Unlike Sweat's claims under the Lanham Act or right to publicity, the reputational injury he alleges from Yerbae's false representations to investors while using his information is not "impoverishment" for purposes of unjust enrichment. Unjust enrichment is a restitutionary remedy that seeks to restore money or benefits received at another's expense, not to compensate for a plaintiff's injury. *See Yee v. Nat'l Gypsum Co.*, No. CV-09-8189-PHX-DGC, 2010 WL 2572976, at *4 (D. Ariz. June 22, 2010) (dismissing unjust-enrichment claim that sought compensatory damages instead of restitution); *Renner v. Kehl*, 722 P.2d 262, 266 (Ariz. 1986) ("Restitutionary recoveries are not designed to be compensatory; their justification lies in the avoidance of unjust enrichment on the part of the defendant.").

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Sweat's claim fails on this theory. *Iqbal*, 556 U.S. at 678.

**F. Promissory Estoppel**

To state a claim for promissory estoppel, the plaintiff must allege that (1) the defendant made a promise, (2) the defendant should have reasonably foreseen the plaintiff would rely on that promise, and (3) the plaintiff actually relied on the promise to his detriment. *Satamian v. Great Divide Ins. Co.*, 545 P.3d 918, 926 (Ariz. 2024). A plaintiff can only recover under promissory estoppel if "he had a justifiable right to rely on the alleged promise." *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002) (simplified). "Reliance is justified when it is reasonable, but is not justified when knowledge to the contrary exists." *Id.* (simplified). Sweat bases his promissory estoppel claim on two theories: (1) Yerbae extended and then retracted permission for him to pursue NIL-related sportswater beverage marketing and (2) Yerbae promised to reimburse his living and vehicle allowances. (Doc. 70 at 32-33.)

Sweat claims he was permitted to pursue NIL-related sportswater beverage marketing after his termination from Yerbae based on a text message where Yerbae's CEO Todd Gibson told him to "[m]ake a candy bar[,] a bottle[d] water[,] or something that does not compete and the company has no issue." (Doc. 70-1 at 85.) But within that same message, Gibson also warned Sweat that he did not have approval to build a product or pursue a contract with UGA, and he was not permitted to use Yerbae's suppliers, contracted customers, knowledge, insight, or intellectual property to create a competitive product. (Doc. 70-1 at 85.) Any reliance on Yerbae's statement was not justified because, within the same communication, Sweat had "knowledge to the contrary" about Yerbae's permission. *Higginbottom*, 51 P.3d at 977. Sweat does not point to any other communications which allegedly granted him permission to pursue NIL-related sportswater beverage marketing (Doc. 70 at 16), so his claim fails to plead justified reliance.[4]

[4] Sweat's claim likely also fails on the first element of promissory estoppel because he has not alleged how the relied-upon sentence from Yerbae was in any way a promise.

As to the hiring and vehicle allowances, although promissory estoppel can be brought as an alternative theory to a breach-of-contract claim, *AROK Const. Co. v. Indian Const. Serv.*, 848 P.2d 870, 878-79 (Ariz. Ct. App. 1993), "Arizona law prohibits an action based on a promissory estoppel theory of liability if there is an express, written contract on the same subject matter." *Bowman v. Honeywell Intern., Inc.*, 438 F. Appx. 613, 615 (9th Cir. 2011) (affirming summary judgment of promissory estoppel claim where express contract on subject matter of dispute existed); *Ariz. Radiation Therapy Mgmt. Serv. Inc. v. Translation Rsch. Mgmt. LLC*, No. CV-15-01138-PHX-DGC, 2015 WL 6384318, at *2 (D. Ariz. Oct. 22, 2015) (dismissing promissory estoppel claim that alleged no extra-contract promises).[5] Sweat's allegations concerning the allowances are expressly governed by the employment agreement. The YEEA expressly promises that "Yerbae will reimburse [Sweat] for all reasonable and necessary . . . expenses incurred by [Sweat] in the performance of [his] duties . . ." (Doc. 1-2 at 2) and Sweat himself characterizes the allowances as reimbursements owed under Yerbae's contracts with him (Doc. 70 at 29). Though plaintiffs can plead alternative or inconsistent theories of recovery, this avenue is foreclosed when—as here—an undisputed, enforceable contract gives rise to the allegations. Count V is dismissed.

**G. Abuse of Process**

To successfully allege abuse of process under Arizona law, Sweat must show that Yerbae committed (1) a willful act in the use of judicial proceedings (2) for an ulterior purpose not proper in the regular course of such proceedings. *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1060 (D. Ariz. 2012). There is no liability for abuse of process where the defendant has "done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id.* Even litigation "motivated by pure spite" is

[5] For unclear reasons, Arizona courts treat promissory estoppel differently than unjust enrichment in this respect. *Compare AROK Const. Co.*, 848 P.2d at 878 (allowing promissory estoppel alternative where parties disagreed whether contract existed), *and Ariz. Radiation Therapy*, 2015 WL 6384318 at *2 (prohibiting promissory estoppel alternative where existence of contract was undisputed); *with Lopez v. Musinorte Ent. Corp.*, 434 F. App'x 696, 699 (9th Cir. 2011) ("a plaintiff can pursue an unjust enrichment claim as an alternative theory of recovery in conjunction with a breach of contract claim, subject, however, to only one recovery.").

insufficient to establish abuse of process where the litigative process is used to accomplish the results for which it was created. *Id.* (simplified).

Here, Yerbae's confidential settlement with CAD, litigation with CCC, and trade-secret claims against Sweat cannot establish abuse of process. (Doc. 70 at 34-35.) Sweat has not alleged "more than mere speculation" that Yerbae used court processes with an improper intent nor suggested how Yerbae acted in a way "inconsistent with legitimate litigation goals." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 889 (Ariz. Ct. App. 2004). At most, Sweat claims Yerbae made baseless claims in attempt to harass him, settled confidentially with CAD to prevent CAD from testifying in this action, and used litigation with CCC to disparage him to the community. (Doc. 70 at 33-34.) But even taking these allegations as true, Sweat has not pointed to any "overt act other than the initiation of a lawsuit" and carrying it through to attempt to achieve a result. *Spears v. Ariz. Bd. of Regents*, 372 F. Supp. 3d 893, 921 (D. Ariz. 2019); *see also Morn v. City of Phoenix*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986) (no abuse of process where plaintiff failed to terminate litigation after allegedly becoming aware of its baseless nature). This count is dismissed.

**H. Defamation**

Defamation under Arizona law requires the plaintiff to show the defendant (1) knew a statement the defendant made was false and defamatory, (2) acted in reckless disregard of the falsity, or (3) was negligent in failing to ascertain it.[6] *Dube*, 167 P.3d at 104. Parties are absolutely privileged to publish defamatory statements during a judicial proceeding in which they participate so long as the publication is connected to the proceeding. *Goldman v. Sahl*, 462 P.3d 1017, 1025 (Ariz. Ct. App. 2020) (quoting *Green Acres*, 688 P.2d at 621). The speaker's "motive, purpose or reasonableness" in making the allegedly false statements do not affect the privilege. *Id.*

---

[6] Although Sweat states his claim as defamation arising under Georgia and Arizona law, Arizona law applies. Arizona courts follow the Restatement of Conflict of Laws which provides that, in tort cases, the law of the state with the most significant relationship to the occurrence and parties governs. *Lucero v. Valdez*, 884 P.2d 199, 201 (Ariz. Ct. App. 1994) (quoting Restatement (Second) of Conflict of Laws § 145(2) (1971)). Here, the demand letter resulted from Sweat's Arizona employment relationship with Yerbae and he does not allege otherwise in response. (*See* Doc. 76 at 15-16.)

Sweat's defamation claim fails for the same reason as his tortious interference claim: statements that are absolutely privileged are "immune from civil liability and courts do not inquire into the defendant's motives or whether the statements were made in good faith." *Ledvina v. Cerasani*, 146 P.3d 70, 72 (Ariz. Ct. App. 2006). As previously discussed, the demand letter Yerbae sent to CCC is privileged. *See Johnson v. McDonald*, 3 P.3d 1075, 1077 (Ariz. Ct. App. 1999) ("Whether a communication is privileged is a question of law for the court."). And Sweat alleges no other plausible basis for his defamation claim. (Doc. 70 at 36-37.) Even if Yerbae made the statements to CCC with "private malice," "ill will," and an "intent to injure [Sweat]" (Doc. 70 at 37), that would not bear on the privilege. *See, e.g., Green Acres*, 688 P.2d at 621 (privilege for parties to a judicial proceeding is absolute regardless of motive). Because Sweat bases his defamation claim only on privileged statements, Count VIII is dismissed.

**I. Indemnification**

"The extent of a contractual duty to indemnify must be determined from the contract itself." *Superior Co. v. Kaiser Cement Corp.*, 733 P.2d 1158, 1160 (Ariz. Ct. App. 1986). Contractual indemnity provisions are based on contract principles rather than equity. *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 159 P.3d 547, 552 (Ariz. Ct. App. 2006). Arizona contract law requires the plaintiff to establish the existence of a contract between himself and the defendant. *See Snyder*, 873 F. Supp. 2d at 1148 (discussing breach of contract under Arizona law); *see also Gritman Med. Ctr., Inc. v. AllScripts Healthcare Sol. Inc.*, No. 3:22-cv-00382-BLW, 2023 WL 6463038, at *5 (D. Idaho Oct. 4, 2023) ("To claim contractual indemnification, a plaintiff must allege the existence of a contractual duty to indemnify.").

The BDSA, which Sweat estimates was signed in February 2023 (Doc. 70 at 3), contains a provision stating the parties will "promptly enter into an indemnification agreement" (Doc. 70 at 38). Regardless of whether this provision established a contractual duty or was just an "agreement to make an agreement," *Peer v. Hughes*, 213 P. 691, 691 (Ariz. 1932), the BDSA was superseded by the YEEA. The YEEA for Sweat's role as president became effective January 1, 2024, and expressly provided it "supersedes any

prior agreements between [Sweat] and YERBAÉ." (Doc. 1-2 at 4). *See Arizona-Parral Min. Co. v. Forbes*, 146 P. 504, 508 (Ariz. 1915) ("A contract may be discharged by the substitution of a new contract . . . [w]here a new contract is expressly substituted for the old one."). The YEEA contains no mention of indemnification. (Doc. 1-2 at 2-4.) Sweat's contractual indemnification claim fails because no contractual duty to indemnify existed after January 1, 2024.

Though Sweat labels his claim as one for contractual *or* common-law indemnification, he has pleaded no elements of common-law indemnification. (Doc. 70 at 37-38.) Common-law indemnification in Arizona would require Sweat to allege (1) he has discharged a legal obligation owed to a third party, (2) Yerbae was also liable to the third party, and (3) as between the two, the obligation should have been discharged by Yerbae. *KnightBrook Ins. Co. v. Payless Car Rental Sys. Inc.*, 409 P.3d 293, 295 (Ariz. 2018) (quoting *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 197 P.3d 758, 764 (Ariz. Ct. App. 2008)). Because Sweat has not alleged any of these elements, Count XI is dismissed.

## IV. Conclusion

Sweat's counterclaims against Yerbae for tortious interference, false association under the Lanham Act, right to publicity, promissory estoppel, abuse of process, defamation, and indemnification are dismissed. His claims for breach of contract and unjust enrichment may proceed only as to the YEEA reimbursement and computer-equipment provisions.

Leave to amend is denied. "Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (simplified). In addition, the deadline for amendment has long since passed (Doc. 65), and Sweat has already attempted one amendment. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted).

Accordingly,

**IT IS ORDERED** that Yerbae's motion to dismiss (Doc. 73) is **GRANTED IN PART** and **DENIED IN PART** as explained in this order.

Dated this 10th day of November, 2026.

Honorable Krissa M. Lanham
United States District Judge